IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE PIERCE-SCHMADER,
           Plaintiff

    v.

MOUNT AIRY CASINO
AND RESORT,
           Defendant

No. 3:13cv1141

(Judge Munley)

## MEMORANDUM

Before the court for disposition is the Defendant Mount Airy Casino and Resort's (hereinafter "defendant") motion to dismiss Plaintiff Michelle Pierce-Schmader's amended complaint in this employment discrimination case. The matter has been fully briefed and is ripe for disposition.

**Background**

Plaintiff worked for defendant in Mount Pocono, Pennsylvania, as a cocktail server commencing in September 2007. (Doc. 8, Am. Compl. (hereinafter "Am. Compl.") ¶ 4). Defendant promoted plaintiff to the position of beverage shift manager in June 2008. (Id. ¶ 5). Plaintiff had perfect attendance at her job, and defendant never reprimanded her during her tenure. (Id. ¶ 6).

On December 25, 2008, plaintiff suffered a work-related injury to her knee. (Id. ¶ 7). She had knee surgery in January 2009. (Id.) Plaintiff was off from work for a period of time because of the surgery, and Plaintiff's doctor established various restrictions or accommodations on plaintiff's return to work. For example, she was limited to lifting no more than forty

(40) pounds; she was to be allowed to sit/stand as needed; to use ice as needed and to park close to the building. (Id. ¶ 8). Defendant made none of these accommodations except allowing plaintiff to park close to the building. (Id. ¶ 9).[1] In fact, defendant refused to review the doctor's requested work restrictions and gave her a *heavier* work load. (Id. ¶¶ 10, 12). In October 2009, plaintiff suffered another work-related injury, that is, she slipped and fell over a company waxing machine that was left unattended. (Id. ¶ 15).

In January 2010, plaintiff's immediate supervisor, Nelson Tavares, began treating her differently from other employees. (Id. ¶ 16). Plaintiff reported in April 2010 that she felt that she was treated differently based upon her race. (Id. ¶ 17). Plaintiff's national origin is American Indian (Meherrin Tribe) and Cape Verdean. (Id. ¶ 3). Tavares made personal attacks on plaintiff, including calling her a derogatory name and insinuating that she was a "drooling idiot." (Id. ¶ 20). Tavares made racial slurs and comments around the workplace. (Id. ¶ 21). Additionally, other beverage shift managers made negative comments about plaintiff and her physical limitations, for example, her inability to change kegs. (Id. ¶ 19).

Plaintiff underwent another surgery on her knee in May 2010 due to defendant assigning her excessive and unwarranted work and not honoring

---

[1] Plaintiff's amended complaint later asserts that the only accommodation provided to plaintiff was the opportunity to ice her knee. (Am. Compl. ¶ 70).

her work restrictions. (Id. ¶ 22). She was also treated for a bulging disk in her neck and back. (Id. ¶ 23). Plaintiff's doctor removed her temporarily from work. (Id. ¶ 25). She was off from work from May 2, 2010 and medically released to return to work in January or February 2011. (Id. ¶¶ 26-27).[2] Plaintiff, however, had difficulty reaching defendant about returning to work. (Id. ¶ 27). Defendant did not answer the many telephone calls she made. Finally, plaintiff went in person to defendant to ask for her job back. (Id. ¶¶ 27-28).

Defendant allowed plaintiff to return to work in April 2011. (Id. ¶ 29). Defendant did not provide her with the job she previously had as a food and beverage manager, but instead offered her a position in the laundry room located in the basement, where plaintiff folded linens and polished silverware. (Id. ¶¶ 29-30). After several weeks of working in the basement, plaintiff began to experience much more pain in her knee and shoulder. (Id. ¶ 31). After contacting defendant's human resources department, plaintiff was transferred to an office position where she assisted other employees working in the Buyers and Financial Department. (Id. ¶ 33). Plaintiff's doctor removed her from work in June 2011 due to excessive swelling and pain that plaintiff had due to working in the

---

[2]Plaintiff's amended complaint asserts that she was medically released to return to work in February 2011 in paragraph 26 and then in paragraph 27 indicates that she was released to return to work in January 2011. (Am. Compl. ¶¶ 26-27).

3

basement. (Id. ¶ 35).

At some point previous to July 2011, plaintiff had filed a workers' compensation case regarding her work-related injuries. She settled the case on July 29, 2011. (Id. ¶ 36). As part of her workers' compensation agreement, plaintiff voluntarily resigned her position with defendant. (Id. ¶ 37). Even though plaintiff voluntarily submitted her resignation, she believes that defendant's actions prior to July 2011 were done in an attempt to obtain her resignation. (Id. ¶ 41). She asserts that not allowing her to return to work as a food and beverage manager and instead providing her with a position folding linens and polishing silverware was a constructive discharge. (Id. ¶ 43).

Based upon these facts, plaintiff filed the instant four-count employment discrimination lawsuit. Count I of the amended complaint alleges racial discrimination, nationality discrimination and disability discrimination in violation of the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951, *et seq.* (Id. ¶¶ 53-59). Count II alleges a violation of the Americans with Disability Act (hereinafter "ADA"), 42 U.S.C. § 12101, *et seq.* (Id. ¶¶ 60-64). Count III is brought pursuant to 42 U.S.C. § 1981 and alleges unlawful discrimination in the making and enforcement of contracts. (Id. ¶¶ 64-75). Count IV asserts a violation of Title VII of the Federal Civil Rights Act of 1991, 42 U.S.C. § 2000(e). (Id. ¶¶ 76-79).

Plaintiff originally filed her complaint in the Monroe County Court of

Common Pleas. The defendant filed a notice of removal, bringing the case to this court on April 29, 2013. (Doc. 1, Not. of Rem.). Defendant then filed a motion to dismiss the complaint. (Doc. 6). In response to the motion to dismiss, plaintiff filed an amended complaint. (Doc. 8). Defendant then filed a motion to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) as well as a motion to strike. (Doc. 10). The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

Plaintiff's amended complaint sets forth several causes of action based upon federal anti-discrimination statutes. Thus, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal standard**

Defendant filed its motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When deciding a Rule 12(b)(6) motion, all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Twp., 838 F.2d

663, 665-66 (3d Cir. 1988) (internal quotation marks and citation omitted). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

**Discussion**

Defendant's motion to dismiss raises the following three (3) issues: 1) Did plaintiff sufficiently plead constructive discharge to permit any claim upon which relief may be granted under Title VII, ADA, section 1981 and/or the PHRA? 2) In the absence of a constructive discharge should the court dismiss or strike plaintiff's demand for reinstatement, front pay, backpay, benefits or other monetary or equitable employment-related relief? and 3) Should the court dismiss or strike plaintiff's demand for punitive damages?

6

We will address these issues *in seriatim*.

**I. All of plaintiff's causes of action**

First, defendant argues that an element of all plaintiff's causes of action is "constructive discharge" or that the discriminatory conditions were so intolerable that a reasonable person would be compelled to resign. Plaintiff's amended complaint, however, contends that she voluntarily resigned her position as part of a workers' compensation stipulation. Thus, she cannot establish a constructive discharge, and all of the causes of action should be dismissed. After a careful review, we disagree with the defendant.

Defendant's initial premise is flawed. Not all of plaintiff's causes of action depend on a "constructive discharge." Rather, each of her claims require an "adverse employment action." See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 412 (3d Cir. 1999) (indicating that an adverse employment action is needed to assert a claim under the PHRA, Title VII and the ADA); Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) (explaining that the substantive elements of a section 1981 claim are the same as a claim under Title VII.). A constructive discharge is an adverse employment action, but it is not the only type of adverse employment action alleged by the plaintiff. We will discuss the issues of "adverse employment action" and "constructive discharge" in turn.

**A. Adverse Employment Action**

7

An adverse employment action is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir.2001)). The Third Circuit Court of Appeals has noted that "[o]bviously, something less than a discharge could be an adverse employment action." Jones, 198 F.3d at 411. For example, the court has held that transfers and demotions may demonstrate adverse employment actions. Id. at 411-12.

Plaintiff has alleged adverse employment actions. With regard to her race claim, she asserts that her immediate supervisor began harassing her in January 2010 and plaintiff believed that she was being treated differently because of her race. (Am. Compl. ¶¶ 16-17). Additionally, with respect to her disability claim, plaintiff alleges that defendant would not even look at the restrictions her doctor gave her and, in fact, gave her a heavier work load after her surgery than she had before. (Id. ¶ 10). As a result, plaintiff needed a second surgery. (Id. ¶ 22). When she was released by the doctor to return to work, the defendant would not return her telephone calls. (Id. ¶ 27). Then when the defendant finally did offer to take her back, it did not offer to her the position that she formerly held, but gave her a job in the basement folding linens and polishing silverware. (Id. ¶ 30). Although the complaint does not explicitly so state, it can be inferred that

this basement job was less desirable than her job as a Food and Beverage Manager. These actions can be seen as serious enough to alter the terms and conditions of her employment.³ As such they can be seen as adverse employment actions and plaintiff need not allege a constructive discharge. Thus, defendant's argument that plaintiff did not properly allege a constructive discharge is not adequate grounds to dismiss the case.

**B. Constructive Discharge**

Defendant is correct in noting, however, that plaintiff's complaint is based in part on a "constructive discharge." We agree with the defendant that plaintiff cannot establish a constructive discharge, and plaintiff's claim of a constructive discharge will be dismissed.

A constructive discharge exists when "the employer makes working

---

³Some of the specific allegations of adverse employment actions are as follows:
Count I, PHRA-Defendant discriminated against plaintiff based on the color of her skin, her American Indian and Cape Verdean descent, and her disabilities in that she was harassed and not accommodated for her disability. (Am. Compl. ¶¶ 56, 58).
Count II, ADA-defendant failed to follow plaintiff's doctor's requested work limitations. (Id. ¶ 62).
Count III, Section 1981-"[P]laintiff's supervisor intentionally sentenced the Plaintiff to a heavier workload and failed to acknowledge her work restrictions in place by her doctor." (Id. ¶ 69). "Plaintiff believes, and therefore avers, she was discriminated against based on her race and her disability, since her only accommodation made after her injury was to take only a five (5) minutes break to ice her knee, even though other employees were allowed a full twenty (20) minute break to smoke a cigarette. (Id. ¶ 70).

conditions so intolerable that the employee is forced to resign." Pa. Labor Relations Bd. v. Sand's Rest. Corp., 240 A.2d 801, 803–04 (Pa. 1968). The standard for intolerability is one of reasonableness—whether a reasonable person in the employee's position would feel compelled to resign. Helpin v. Trs. of the Univ. of Pa., 969 A.2d 601, 614 (Pa. Super. Ct. 2009) (citing Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998)). "Constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Spencer v. Wal-Mart Stores, 469 F.3d 311, 317 n.4 (3d Cir. 2006) (internal citation and quotation marks omitted). In the instant case, however, a constructive discharge did not occur. Plaintiff alleges that she resigned from her position

With regard to "constructive discharge," plaintiff avers, "Defendant's actions in April of 2011, making [plaintiff] work in the basement, folding linens and polishing silverware in the laundry room instead of allowing her to return to her position as Food and Beverage Manager, constituted a constructive discharge." (Am. Compl. ¶ 43). Plaintiff did not resign at this point, so it cannot be alleged that providing her a job in the laundry room was a constructive discharge. In fact, the complaint alleges that after two (2) or (3) weeks, plaintiff's knee and shoulder pain increased due to the laundry room position. (Id. ¶ 31). She contacted the defendant's Human Resources Department, which told her that they would try to transfer her to

10

another department. (Id. ¶ 32). Plaintiff then was transferred to a position "where she had her own cubicle and spent a lot of time assisting other employees and working in the Buyers and Financial Department." (Id. ¶ 33). Thus, plaintiff was transferred to what was apparently a more suitable position. There was no separation from work at this point, hence, it is not appropriate to claim that the basement work assignment was a constructive discharge.

Moreover, plaintiff did not resign from her position until July 29, 2011 as part of the settlement of her workers' compensation claim. (Id. ¶ 36). Plaintiff's complaint indicates that she "voluntarily resigned her position." (Id. ¶ 37). She admits that she resigned her position as a result of the settlement of her workers' compensation case. Thus, plaintiff cannot establish a constructive discharge.

Even had she resigned separate from the workers' compensation settlement, a constructive discharge claim could not be established. She told the defendant of the problem she had in the basement position. The human resources department indicated that it would try to have her transferred, and she was indeed transferred to an office job. Plaintiff makes no allegation in the complaint that this new job had conditions of discrimination so intolerable that a reasonable person subject to them would resign. Accordingly, plaintiff could not have established a constructive discharge claim. Spencer, 469 F.3d at 317 n.4.

Defendant's argument that plaintiff cannot establish a constructive discharge is convincing. The portion of the amended complaint pertaining to constructive discharge will be dismissed. The court, however, will allow plaintiff's PHRA, Title VII, ADA and section 1981 claims based on adverse employment actions other than a constructive discharge to proceed. Plaintiff has alleged sufficient adverse employment actions to make dismissing these claims at this point inappropriate.

**II. Damages**

Plaintiff's complaint seeks the following relief: a) that the defendant be permanently enjoined from discriminating or retaliating against her in violation of the ADA; b) the defendant rehire her, with full salary, seniority, benefits and profit-sharing; c) pay, benefits, training, promotions, and seniority that she would have received had she not been retaliated against; d) damages for loss of opportunity and pain and suffering; e) compensatory damages; f) interest on the amount of unpaid wages; g) costs and reasonable attorney's fees; h) punitive damages on the section 1981 claim; and I) any other relief, equitable or legal. (Am. Compl., Ad Damnum Clauses).

Defendant argues that plaintiff is not entitled to recover some of these damages. First, it argues that because she was not discharged, monetary damages, such as back pay and front pay, are inappropriate. Second, it argues that the workers' compensation settlement agreement

that she entered into precludes recovery. We will address these issues in turn.

### A. Discharge/Damages

First, defendant argues that because plaintiff cannot establish a constructive discharge claim, she cannot recover reinstatement, front pay, back pay, benefits or any other monetary or equitable employment-related relief. In support of this position, defendant cites to the Third Circuit case of Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311 (3d Cir. 2006).

In Spencer, the plaintiff, a former employee of Wal-Mart Stores, Inc., sued the store for violation of the ADA/hostile work environment. Id. at 313. The issue before the Third Circuit was whether the plaintiff was entitled to an award of back pay even though she had not alleged a constructive discharge. The court held "that a successful hostile work environment claim alone, without a successful constructive discharge claim, is insufficient to support a back pay award." Id. at 317. "Put simply, if a hostile work environment does not rise to the level where one is forced to abandon the job, loss of pay is not an issue." Id. The court noted that several other circuit courts "have held similarly that a plaintiff alleging employment discrimination must show either actual or constructive discharge in order to receive an award of back pay." Id. at n.6.

Thus, defendant's argument that plaintiff is not entitled to back pay because she cannot establish constructive discharge has merit. But, the

13

Spencer case only discussed the back pay issue, not front pay, benefits and other monetary or equitable employment-related relief. The court's reasoning, however, applies equally to those other damages. Loss of pay, both back and front, and loss of benefits are not an issue if the plaintiff was not forced to leave her job. See, e.g., Hare v. Potter, 220 Fed. App'x 120, 135 n.9 (3d Cir. 2007) (explaining in an unpublished opinion, that a plaintiff who cannot establish constructive discharge "probably will not be able to seek back pay or front pay.")

Accordingly, we will grant defendant's motion to dismiss the following elements of damage from the case: reinstatement, front pay, back pay, benefits or other monetary or equitable employment-related damages. Plaintiff may still be entitled to "compensatory" damages. Compensatory damages include: "'future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.'" Landgraf v. USI Film Prods., 511 U.S. 244, 253 (1994) (quoting 42 U.S.C. § 1981a (b)(3)). Thus, plaintiff's claims will remain, but the relief that she can recover under those claims will be limited. We will address below whether she may seek punitive damages.

**B. Worker's Compensation settlement agreement**

Defendant also alleges that as part of plaintiff's workers' compensation settlement, she entered into an agreement that precludes reinstatement to her job, front pay, back pay, benefits or other monetary or

14

equitable employment-related damages.  With regard to this issue, defendant does not argue that plaintiff has waived her causes of action, but rather, that she has waived her right to these damages under her causes of action.

We need not address this issue as we have previously found, that plaintiff cannot receive these damages because she cannot establish a constructive discharge.  We note, without detailed analysis, however, that defendant's argument appears to have merit.  In her resignation letter, plaintiff agrees not to apply for or seek reinstatement or employment with the defendant. (Doc. 7-4, Def. Attach. 2 at 10).   The letter also indicates that plaintiff consulted with an attorney prior to resigning and that the attorney explained the legal effect of her signing the resignation form.  (Id.) Plaintiff has entered into an agreement with the defendant to not seek reinstatement or other certain damages.  Regardless, she asks for such relief in the instant complaint.  Such a request appears to be in violation of the agreement.

### III.  Punitive damages

As noted above, plaintiff's complaint also seeks punitive damages. Defendant argues that the punitive damages claim should be dismissed because it is unsupported by the complaint's allegations.  We disagree.

The law provides that punitive damages may be granted in an employment discrimination case where the employer acted with malice or

15

with reckless indifference to a federally protected right. Le v. Univ. of Pa., 321 F.3d 403, 410 n.4 (3d Cir. 2003).

We find plaintiff's complaint is sufficient to withstand defendant's motion to dismiss the punitive damages claim. As set forth above, plaintiff alleges that the defendant took adverse employment actions against her such as, *inter alia*, assigning her a heavier workload after she was injured and failing to read the restrictions her doctor placed on her. The complaint alleges that the defendant's conduct was intentionally malicious, wanton and wilful. (Am. Compl. ¶¶ 75, 79). Plaintiff has alleged facts that support a discrimination claim and that the defendant performed its allegedly discriminatory acts with the requisite state of mind to impose punitive damages. It is, thus, inappropriate to dismiss the punitive damages claim at this point.

**Conclusion**

For the reasons set forth above, we will grant the defendant's motion to dismiss in part and deny it in part. Plaintiff's allegation of a constructive discharge will be dismissed. Plaintiff request for reinstatement, front pay, back pay, benefits or other monetary or equitable employment-related damages will be dismissed. The motion to dismiss the punitive damages claim will be denied. As such, Counts I through IV based on adverse employment actions other than constructive discharge remain pending. Plaintiff, however, may only recover compensatory and/or punitive damages for these claims. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE PIERCE-SCHMADER, : No. 3:13cv1141
    Plaintiff :
: (Judge Munley)
    v. :
:
MOUNT AIRY CASINO :
AND RESORT, :
    Defendant :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 11th day of September 2013, the defendant's motion to dismiss plaintiff's amended complaint (Doc. 10) is hereby **GRANTED** in part and **DENIED** in part as follows:

The motion to dismiss plaintiff's Amended Complaint on the basis that plaintiff has failed to allege a constructive discharge is **DENIED.**

Plaintiff's allegation of a constructive discharge is **DISMISSED**;

The motion is **GRANTED** with respect to the following relief that plaintiff seeks: reinstatement, front pay, back pay, benefits or other monetary or equitable employment-related damages. These types of damages are dismissed form the case;

The motion to dismiss plaintiff's punitive damages claim is **DENIED**.

                                 **BY THE COURT:**

                                 **s/ James M. Munley**
                                 **JUDGE JAMES M. MUNLEY**
                                 **United States District Court**