**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE PIERCE-SCHMADER,** | : | **No. 3:13cv1141** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **MOUNT AIRY CASINO** | : | |
| **AND RESORT,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court for disposition is Defendant Mount Airy Casino's (hereinafter "defendant") motion for summary judgment.  Plaintiff Michelle Pierce-Schmader (hereinafter "plaintiff") filed the instant lawsuit alleging that her former employer, the defendant, engaged in discrimination based upon her color/race,  nationality and disabilities.  After a period of discovery, the defendant filed the instant motion, and it is now ripe for disposition.

**Background** [1]

Plaintiff began working as a cocktail server for the defendant in

---

[1]For these brief background facts, we will cite to the Amended Complaint.  We will cite to relevant evidence of record when we address the substantive issues below.

Mount Pocono, Pennsylvania, in September 2007.  (Doc. 8, Am. Compl. (hereinafter "Am. Compl.") ¶ 4).  Defendant promoted plaintiff to the position of beverage shift manager in June 2008.  (Id. ¶ 5).

On December 25, 2008, plaintiff suffered a work-related injury to her knee and underwent knee surgery in January 2009.  (Id. ¶ 7).  The surgery left plaintiff unable to work for a period of time, and plaintiff's doctor established various restrictions on plaintiff's return to work.  For example, she was limited to lifting no more than forty (40) pounds; she was to be allowed to sit/stand as needed; to use ice as needed and to park close to the building.  (Id. ¶ 8).   Plaintiff alleges that defendant failed to properly accommodate her injury.  (Id.  ¶ 9).  In fact, plaintiff avers that defendant gave her a *heavier* work load.  (Id. ¶¶ 10, 12).  In October 2009, plaintiff suffered another work-related injury, that is, she slipped and fell over a company floor waxing machine that was left unattended.  (Id. ¶ 15).

In January 2010, plaintiff's immediate supervisor, Nelson Tavares, began treating her differently from other employees.  (Id. ¶ 16).  Plaintiff reported to the human resources department in April 2010 that she felt that he treated her differently due to her race.  (Id. ¶ 17).[2]  Additionally, other

---

[2]Plaintiff's national origin is American Indian (Meherrin Tribe) and Cape Verdean.  (Doc. 8, Am. Compl. at ¶ 3).

2

beverage shift managers made negative comments about plaintiff and her physical limitations, for example, her inability to change kegs.  (Id. ¶ 19).

Plaintiff underwent another surgery on her knee in May 2010.  (Id. ¶ 22).  She was also treated for a bulging disk in her neck and back.  (Id. ¶ 23).  Plaintiff's doctor removed her temporarily from work. (Id. ¶ 25).  She was off from work from May 2, 2010 and medically released to return to work in February 2011.  (Id. ¶¶  26-27).[3]

Plaintiff, however, had difficulty reaching defendant about returning to work.  (Id. ¶ 27).  Defendant did not answer her telephone calls.  Finally, plaintiff went in person to defendant to ask for her job back.  (Id. ¶¶ 27-28).

Defendant allowed plaintiff to return to work in April 2011.  (Id. ¶ 29). Defendant did not provide her with the job she previously had as a food and beverage manager, but instead offered her a position in the laundry room located in the basement, where plaintiff folded linens and polished silverware.  (Id. ¶¶ 29-30).

After several weeks of working in the basement, plaintiff began to experience increased pain in her knee and shoulder.  (Id. ¶ 31).   After

_____

[3]Plaintiff's amended complaint asserts that she was medically released to return to work in February 2011 in paragraph 26 and then in paragraph 27 indicates that she was released to return to work in January 2011.  (Am. Compl. ¶¶ 26-27).

contacting defendant's human resources department, defendant transferred her to an office position where she assisted other employees working in the Buyers and Financial Department.  (Id. ¶ 33).   Plaintiff's doctor removed her from work in June 2011 due to excessive swelling and pain that plaintiff suffered due to working in the basement. (Id. ¶ 35).

At some point previous to July 2011, plaintiff had filed a workers' compensation case regarding her work-related injuries.  She settled the case on July 29, 2011.  (Id. ¶ 36).  As part of her workers' compensation agreement, plaintiff voluntarily resigned her position with defendant.  (Id. ¶ 37).  Even though plaintiff voluntarily submitted her resignation, she believes that defendant's actions prior to July 2011 were done in an attempt to obtain her resignation.  (Id. ¶ 41).

Based upon these facts, plaintiff filed the instant four-count employment discrimination lawsuit.   Count I of the amended complaint alleges racial discrimination, nationality discrimination and disability discrimination in violation of the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951, *et seq.*  (Id. ¶¶ 53-59).  Count II alleges a violation of the Americans with Disability Act (hereinafter "ADA"), 42 U.S.C. § 12101, *et seq.*  (Id. ¶¶ 60-64).  Count III is brought pursuant to 42 U.S.C. § 1981 and

4

alleges unlawful discrimination in the making and enforcement of contracts. (Id. ¶¶ 64-75).   Count IV asserts a violation of Title VII of the Federal Civil Rights Act of 1991, 42 U.S.C. § 2000(e).  (Id. ¶¶ 76-79).

Plaintiff originally filed her complaint in the Monroe County Pennsylvania Court of Common Pleas.  The defendant filed a notice of removal, bringing the case to this court on April 29, 2013.  (Doc. 1, Not. of Rem.).  Defendant then filed a motion to dismiss the complaint.  (Doc. 6). In response to the motion to dismiss, plaintiff filed an amended complaint. (Doc. 8).

Defendant then moved to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) as well as moving to strike.  (Doc. 10).  The court granted the motion to dismiss in part and denied it in part. (Doc. 14, Memo. & Order dated Sept. 11, 2013 at 17).  The motion to dismiss on the basis that plaintiff had failed to allege a constructive discharge with regard to all of her claims was granted.  (Id.) The court also granted the motion with respect to the following relief: reinstatement, front pay, back pay, benefits or other monetary or equitable employment-related damages. (Id.)  The court denied the motion to dismiss the punitive damages claim and the remainder of the motion to

5

dismiss.  (Id.)

Subsequently, defendant filed an answer and the parties proceeded through discovery.  At the end of the discovery period, the defendant filed the instant motion for summary judgment.  The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to various federal statutes for unlawful employment discrimination, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some

6

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there

is a genuine issue for trial.  Id. at 324.

In analyzing summary judgment motions in cases involving employment discrimination, a burden-shifting analysis is utilized which was set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The purpose of the burden-shifting review is to determine whether the plaintiff has established a *prima facie* case of discrimination. Geraci v. Moody-Tottrup, Int'l Inc., 82 F.3d 578, 580 (3d Cir. 1996).  First, the plaintiff must establish unlawful discrimination.  The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for terminating her.  Once the employer has offered a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason was merely pretextual.  Id.  (citing  McDonnell Douglas, supra and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981)).

**Discussion**

Defendant's motion for summary judgment raises the following issues: 1) statute of limitations precludes all claims; 2) plaintiff's nationality and skin color/race discrimination claims fail on the merits; 3) plaintiff's retaliation claim fails on the merits; 4) plaintiff's disability discrimination claims fail on the merits; and 5) plaintiff has failed to establish any basis for

8

the recovery of punitive damages.  We will address these issues in turn.

## I.  Statute of Limitations

The first issue raised by the defendant is the statute of limitations. A claim of discrimination under the state law, the PHRA, must be filed within 180 days of the alleged discrimination.  43 PA. CONS. STAT. ANN.  § 959(h). Claims of discrimination under the federal statutes, Title VII and the ADA, must be filed within 300 days of the discrimination.   42 U.S.C. § 2000e-5(e).[4]  In the instant case, the plaintiff's state law claims are identical to the federal claims.  We will therefore analyze the statute of limitations based upon the longer of the two limits, the 300-day limit.   Defendant alleges that all of the plaintiff's claims are time barred.  We will address the different claims separately.

### A.  Discrimination and/or harassment under the PHRA and Title VII

---

[4]  Generally, the limitations period under the federal laws is180 days. If, however, the plaintiff "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice" in which case the limitation period is 300 days.  42 U.S.C. § 2000e-5(e).  In the instant case, plaintiff "dual filed" an initial administrative charge with the Pennsylvania Human Relations Commission ("PHRC") and the United States Equal Employment Opportunity Commission ("EEOC").  Thus the 300-day limitations period applies.

The first claims that defendant attacks on statute of limitations grounds are plaintiff's claims of race and/or nationality discrimination/harassment under both Pennsylvania state law and federal law.  Plaintiff initially raised these claims by dual filing a complaint  with the PHRC and the EEOC on September 22, 2010.  (Doc. 27-28, Defs.' Ex. 27, PHRC and EEOC Complaint (hereinafter "Pl.'s Initial Complaint")).[5]   The 300-day look back period thus runs back to November 29, 2009.  For the complaints of discrimination to be timely, they must have occurred between November 29, 2009 and September 22, 2010.  Events prior to November 29, 2009 are barred by limitations period.

Defendant argues that plaintiff has not presented evidence that defendant took any allegedly discriminatory actions against her during the applicable statutes of limitations.  After a careful review, agree.

Plaintiff asserts various matters in support of the discrimination claim, including the following:  several comments that were made by her supervisor/co-workers; general harassment that she asserts is tinged with discriminatory animus; and a written job performance warning.

---

[5]  In this complaint she alleged discrimination based upon her protected class.  She stated "My protected class is my skin color, which is Brown."  (Id. ¶ 14).

Defendant argues that the only adverse action that plaintiff has actually presented evidence on with regard to her race/nationality discrimination claims is the written job performance warning which was provided by the Assistant Beverage Manager, Michelle Camardo.  This job performance warning is dated September 1, 2009.  (Doc. 27-15, Def.'s Ex. 14).  Thus the warning was provided outside of the limitations period.

Even if the warning had been issued during the statute of limitations period, it still would not save plaintiff's claim.  Plaintiff provides absolutely no evidence to indicate that the warning was issued for some improper discriminatory reason.  In fact, plaintiff concedes that Camardo, who issued the warning, never said anything racial to her and took no actions against her based upon plaintiff's protected status.  (Def. SOF ¶¶ 80-82).[6]

Plaintiff also asserts that her manager, Nelson Tavares, and a fellow beverage shift manager, Jack Fennel made two derogatory statements

---

[6]When asked at her deposition whether Camardo ever made any derogatory statements with respect to plaintiff's race or national origin, plaintiff responded "She did not."  (Def. Ex. 3, Pl. Dep. at 376).  Additionally, when asked whether Camardo took any actions against her due to plaintiff's race, color or national origin, plaintiff responded, "I don't know."  (Id.)

evincing discriminatory animus.[7]  Plaintiff, however, could not recall these

occurring on or after November 29, 2009.  No one, however, ever made a

derogatory racial statement directly to the plaintiff - she overheard these

two statements.  (Id. at 365).   Plaintiff points to no evidence as to when

these two statements were made except that they were sometime in 2009

and that after 2009 no racially charged language or language that

negatively reflected on her national origin were made.  (Id. at 371).   A

stray remark standing on its own is unlikely to be sufficient to demonstrate

discriminatory animus.  See Waldron v. SL Industries, Inc., 56 F.3d 491,

(3d Cir. 1995).

     To counter the defendant's argument with regard to lack of evidence,

the plaintiff does not cite to any new evidence produced or uncovered

during the discovery process.  Rather, plaintiff merely cites to the

allegations she made in the complaint that she filed with the PHRC in

2010.[8]

_____

     [7]  Tavares said that a trainee was his "token boy."  It is not clear what
race the trainee was, but he skin color was "dark brown" according to the
plaintiff.  (Pl. Dep. at 360).  Plaintiff is not precise or complete on the next
statement or its context, but only that it included the phrase "n- - - - r in the
wood pile." (Id. 361-362).

     [8]Plaintiff refers to the allegations as an "unsworn declaration under
penalty of perjury."  In this complaint, plaintiff alleges that defendant

12

The law provides that "[a]t summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

Plaintiff in the instant matter, has thus failed to establish a genuine issue of material fact with regard to the statute of limitations. The parties engaged in discovery for several months, and plaintiff has uncovered nothing within the applicable limitations period to support her claims that she was discriminated against based upon her color/race or national origin, but a form that she herself filled out several years ago. Thus, we find that

---

treated her less favorably than white employees from about August 1, 2008 until March 26, 2010. (Doc. 11-1, ¶ 11). Then from March 26, 2010 to May 2, 2010, she was also treated less favorably than white employees by increasing her work duties, criticizing her job performance and mandating that she attend weekly job performance meetings. (Id. ¶¶ 15-20). Plaintiff alleges that Tavares told her to "Put a hair pick and not a comb through your nappie <sic> hair." (Id. ¶ 21).

Defendant argues that this initial complaint is nothing more than a "self-serving affidavit," and it is not proper summary judgment evidence, but merely allegations she has made in the past, allegations which are contradicted by her deposition. We agree. To be perfectly clear, the "evidence" that plaintiff has submitted is merely the complaint that she originally drafted for the EEOC and PHRC. She has not submitted documents or depositions or other substantive evidence to support these allegations.

plaintiff's claim of discrimination and/or harassment under the PHRA and

Title VII will be dismissed based upon the statute of limitations.

## B. Plaintiff's retaliation claims

Defendant next discusses the statute of limitations as it relates to

plaintiff's claims of retaliation.  Our review of the complaint, however,

reveals no separate cause of action for retaliation.  Plaintiff does use the

word "retaliation" in the "ad damnum" clause of Count I in her complaint,

and the parties address "retaliation" as if it is a properly pled claim under

the PHRA and Title VII.[9]    We will, therefore, also address it.

First, defendant argues that the plaintiff's claims of retaliation are

untimely.  Plaintiff initially raised her claim of retaliation in a second charge

that she dual filed with the PHRC and EEOC on March 24, 2011.  (Doc.

27-29, Def. Ex. 28, PHRC Case No. 201004962 Complaint).  Plaintiff was

---

[9]Specifically, in Count I, the PHRA count, the plaintiff seeks, among
other things, that "Defendant be ordered to compensate, reimburse, and
make whole the Plaintiff for all the benefits the Plaintiff would have
received had it not been for the Defendant's illegal retaliation[.]" (Doc. 8,
Am. Compl. ¶ 59(c)).  In the same section of her complaint, plaintiff seeks:
"Damages to the Plaintiff to compensate Plaintiff for loss of opportunity,
paid <sic>, suffering, or other damage duly proved to have been suffered
by Plaintiff because of Defendant's unlawful retaliation."  (Id. ¶ 59(d)).
These are the only two mentions of "retaliation" in the amended complaint.
No separate cause of action for retaliation has been pled.

14

off from work for medical reasons from May 2, 2010 and she was not released to return to work until February 8, 2011.  (Id. ¶ 11).  During that period, plaintiff filed her initial PHRC complaint wherein she alleged "discrimination due to her Color/Brown."  (Id. ¶ 10).

The second complaint, the March 24, 2011 complaint, apparently alleges that defendant did not allow her to return to work in February 2011 in retaliation for having filed the original charge of discrimination against it. As noted above, the relevant limitations period is 300 days.  Here, plaintiff filed her charge in March and she complains of actions that took place a month or less before.  Therefore, the statute of limitations does not bar the retaliation claim involving the failure to allow her back to work in 2011. This portion of the summary judgment motion will be denied.

## C. Disability discrimination

Count II of plaintiff's complaint asserts a cause of action for disability discrimination under both the Americans With Disabilities Act ("ADA") 42 U.S.C. § 12101, *et seq.*  and the Pennsylvania Human Relations Act, 43 PA. STAT. ANN. § 951, *et seq.*  Defendant argues that the ADA claim is also precluded by the statute of limitations.

Plaintiff raised the disability discrimination claim by filing an amended

15

complaint before the PHRC and EEOC on August 22, 2011.  (Doc. 27-30,

Def. Ex. 29, Amended Compl.).  In this complaint, for the first time, she

charges disability discrimination.   Plaintiff alleges that she injured herself

several times at work and needed several surgeries.  She alleged that her

doctor's job restrictions were "ignored, rebuffed and dismissed" by the

defendant.  (Id. ¶ 12).  In fact, instead of complying with plaintiff's job

restrictions, defendant increased her workload according to plaintiff's

amended complaint.  (Id. ¶ 13).

These issues were raised for the first time in the amended

administrative complaint or charge that plaintiff filed on August 22, 2011.

Thus, the relevant statutory limitations period runs back to October 26,

2010 and any alleged acts of disability discrimination that occurred before

October 26, 2010 are barred.

Plaintiff complains of actions that took place in May 2009 when she

returned to work after her first surgery where she alleges that her

supervisor refused to look at her restrictions.  This alleged discrimination

happened well before the statutory period, and therefore, it is precluded.

Plaintiff also arguably raises issues of disability discrimination with

regard attempting to return to work after her second surgery.  Plaintiff

maintains that she "has provided evidence that Mount Airy discriminated against her and/or failed to accommodate her alleged disability during the applicable limitations periods[.]" (Doc. 30, Pl.'s Brief at 13).  Plaintiff, however, does not cite to this evidence.  It appears, however, that after plaintiff was released to return to work, the defendant failed to return her phone calls.  When plaintiff eventually did return to work it was in an arguably less desirable position than that which she formerly had.[10]  This alleged disability discrimination occurred in February through April 2011, which is within the statute of limitations period.

Thus, plaintiff's disability discrimination claim with regard to returning to work after her first surgery is barred by the statute of limitations.  The disability discrimination claim with regard to returning to work after her second surgery is not barred by the statute of limitations.

Accordingly, we conclude as follows with regard to the statute of limitations arguments: 1) plaintiff's claims of discrimination/harassment under the PHRA and Title VII will be dismissed for failing to meet the limitations period; 2) the statute of limitations does not preclude plaintiff's retaliation claims; 3) plaintiff's claim of disability discrimination with regard

---

[10]These are the same actions that plaintiff avers defendant took in retaliation for her filing of the PHRC/EEOC complaint.

to returning to work after the first surgery in October 2010 is barred by the

statute of limitations but plaintiff's claim of disability discrimination with

regard to returning to work after her second surgery in February 2011 is

not barred by the statute of limitations.

## II.  Plaintiff's prima facie case

Defendant's second main argument is that even if any of plaintiff's

claims are not barred by the statute of limitations they should still be

dismissed.  Defendant argues dismissal is appropriate because plaintiff

cannot establish a *prima facie* case of discrimination with regard to any of

her claims.

As noted briefly above, courts have also established a

burden-shifting scheme for claims of employment discrimination under Title

VII when no direct evidence of such discrimination exists: "the plaintiff must

establish a prima facie case of discrimination. If the plaintiff succeeds in

establishing a prima facie case, the burden shifts to the defendant 'to

articulate some legitimate, nondiscriminatory reason for the plaintiff's

rejection." Jones v. School Dist. of Philadelphia, 198 F.3d 403, 408 (3d Cir.

1999) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792,802

(1973)). If the defendant meets that burden, the burden shifts back to the

18

plaintiff, who must "prove by a preponderance of the evidence that the

legitimate reasons offered by the defendant were not its true reasons, but

were a pretext for the discrimination." Id.

A plaintiff seeking to establish a prima facie case under Title VII

"must show (1) that she is a member of a protected class, (2) she was

qualified for the position, (3) she was discharged, and (4) the position was

ultimately filled by a person not of the protected class." Sheridan v. E.I.

DuPont de Nemours and Co., 100 F.3d 1061, 1066 (3d Cir.1996).  The law

provides that:

> The existence of a *prima facie* case of employment
> discrimination is a question of law that must be
> decided by the Court.  It requires a showing that: (1)
> the plaintiff belongs to a protected class; (2) he/she
> was qualified for the position; (3) he/she was
> subject to an adverse employment action despite
> being qualified; and (4) under circumstances that
> raise an inference of discriminatory action, the
> employer continued to seek out individuals with
> qualifications similar to the plaintiff's to fill the
> position.

Sarullo v. US Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

Defendant argues that plaintiff has not established a *prima facie* case

because, *inter alia*, she has not established that defendant subjected her

to an adverse employment action.  In fact, she voluntarily resigned her

position as part of a worker's compensation settlement.  On the other

19

hand, plaintiff appears to allege that although she did voluntarily resign,

she suffered adverse employment actions prior to her resignation.

Specifically, she was "harassed" and treated poorly by others at work, the

defendant ignored or refused to look at her medical restrictions after her

first surgery and increased her job duties, after her second surgery the

defendant did not take her back immediately, and when they did take her

back it was to a different position, which was presumably less desirable

than the position she had.  We will discuss the *prima facie* case with regard

to each of plaintiffs separate claims, that is Title VII, retaliation and

disability discrimination separately.

**A.  Discrimination and/or harassment under the PHRA and Title VII**

As noted above, we will grant judgment to the defendant on the

plaintiff's PHRA and Title VII claims based upon a failure to meet the

statute of limitations.  We will also discuss the merits of these claims,

however, as it is clear that even if the plaintiff had met the statute of

limitations judgment in defendant's favor would be appropriate.  Plaintiff's

claim under the PHRA and Title VII, has two facets.  One is direct

discrimination, and the other is harassment.  These claims are best

discussed individually.

### 1.  Direct Discrimination

The third element of plaintiff's *prima facie* case is that despite being

qualified[11] for the position, plaintiff suffered an adverse employment action.

Defendant argues that plaintiff fails to identify a single adverse employment

action.

The Third Circuit Court of Appeals has defined an "adverse

employment action" as "an action by an employer that is serious and

tangible enough to alter an employee's compensation, terms, conditions, or

privileges of employment."  Storey v. Burns Intern. Secuirty Serv., 390 F.3d

760, 764 (3d Cir. 2004) (internal quotations marks and citation omitted).

Plaintiff has alleged adverse employment actions.  With regard to her

---

[11]Defendant does not challenge the first element of plaintiff's *prima
facie* case, that is that she belongs to a protected class.  Defendant does
contest the second element.  It argues that plaintiff was not "qualified" for
the beverage shift manager position that she held.  Defendant argues that
the record demonstrates that when plaintiff applied to be promoted to the
beverage shift manager position, she made material misrepresentations in
her expressions of interest and resume.  The misrepresentations made it
appear that she possessed the qualifications for the position, but her actual
performance established that she lacked the qualifications.  We will not
address this argument because we conclude that regardless of whether
plaintiff possessed the qualifications for her position, she has not
established an adverse employment action.

race claim, she asserts that her immediate supervisor began harassing her

in January 2010 and plaintiff believed that she was being treated differently

because of her race.  (Am. Compl. ¶¶ 16-17).  In opposition to the motion

for summary judgment, the plaintiff, however, does not present evidence to

establish the allegations in her amended complaint.  Rather, she quotes

the court's memorandum on the motion to dismiss.  Merely, because the

court found sufficient allegations to overcome a motion to dismiss,

however, does not meet the burden the plaintiff has on the summary

judgment stage.  <u>Celotex</u>, 477 U.S. at 324.  Thus, plaintiff has failed to

present evidence of an adverse employment action.  Therefore, all of her

Title VII and PHRA claims would fail even if plaintiff had met the statute of

limitations.

### 2.  Harassment

To establish her *prima facie* case of discrimination plaintiff also

alleges harassment.  She asserts that the "Mount Airy's workplace was

permeated with severe or pervasive discriminatory intimidation, ridicule,

and insult."  (Doc. 30, Pl. Oppo. Brief at 17).  The Third Circuit has

explained that "[i]n order to establish a claim for employment discrimination

due to an intimidating or offensive work environment, a plaintiff must

22

establish, by the totality of the circumstances, the existence of a hostile or

abusive *environment* which is severe enough to affect the psychological

stability of a minority employee."  Amam v. Cort Furniture Rental Corp., 85

F.3d 1074, 1081 (3d Cir. 1996) (emphasis in original, quotations marks and

internal citation omitted).

> The specific factors that a plaintiff must demonstrate are:

> > (1) that he or she suffered intentional discrimination
> > because of race;
> > (2) the discrimination was pervasive and regular;
> > (3) the discrimination detrimentally affected the
> > plaintiff;
> > (4) the discrimination would detrimentally affect a
> > reasonable person of the same race in that position;
> > and
> > (5) the existence of respondeat superior liability.

Id.

The evidence of this severe or pervasive discriminatory intimidation,

ridicule, and insult are the two comments noted above, that were not aimed

at her, and a comment made that indicated she had "nappy" hair.  (Id.)

Based upon the totality of the circumstances, we find that the evidence

plaintiff presents is insufficient to meet her burden.  The uttering of three

comments over the course of several years does not rise to the level of

being "severe or pervasive" discriminatory intimidation.  Thus, even if the

harassment claims were not time barred, they would be dismissed on the

23

merits.[12]

## B. Retaliation claims under Title VII, PHRA and § 1981

Defendant next challenges the merits of plaintiff's retaliation claims. A plaintiff who asserts illegal retaliation under Title VII must first establish that "(1) he was engaged in protected activity; (2) he was [subject to an adverse job action] subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the [subsequent adverse job action]." Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir.1997).

In the page and a half of plaintiff's brief that she dedicates to the retaliation claim (Doc. 30, at 20-22), she argues adverse action in the form of harassment at work.  As noted above, plaintiff has failed to hasn't sufficiently establish a harassing work environment.  Moreover, as noted above, plaintiff filed her first charge of discrimination in September 2010. The harassment that she complains of began well before September 2010. It began when she returned from work after her first surgery in May 2009. She does not allege that alleged harassment commenced or worsened

---

[12]Plaintiff has not provided any evidence to support the contention that any poor treatment she received from her co-workers was due to racial animus.

24

after she filed her charge of discrimination.  It is merely a continuation of the "harassment" that she previously alleged.  Plaintiff complains of what she deemed to be continuous poor treatment.  The harassment, therefore, cannot be evidence of retaliation.

Plaintiff also complains about the defendant delaying her return to work in February 2011.  She claims that she was released back to work, but the company did not let her return until April 2011 in retaliation for her civil rights complaints.  Plaintiff offers no evidence that the delay was caused by her filing charges of discrimination except the inference caused by the temporal proximity of her initial charge of discrimination in September 2010 and then her attempt to return to work approximately five months later in February 2011.

Here, defendant contends that it presents evidence to support the fact that it failed to bring plaintiff back to work, not for any discriminatory or retaliatory reason, but because of a pending worker's compensation claim. Plaintiff has not properly controverted this evidence, therefore, the court should consider the facts surrounding her return to work as undisputed.[13]

---

[13]The Local Rules of Court provides that a party who moves for summary judgment must file a statement of material facts to which there is no genuine issue to be tried.  L.R. 56.1.  The party opposing the motion must then file a response to the numbered paragraphs of the moving

After a careful review, we agree.

Defendant notes that when she initially attempted to return to work in February 2011, she was still not released to work by her treating physician, although a doctor who performed an independent medical review had indicated that she was released to work.  (Doc. 27, Def. SOF ¶¶ 119-122).

Before applying to come back to work, plaintiff had filed a worker's compensation claim.  During the time between February and when she returned to work in April 2011, plaintiff's attorney and Mount Airy's workers' compensation insurance carrier's attorney were engaged in settlement negotiations of the claim.  (Id. ¶¶ 123-124).  These negotiations caused the delay in plaintiff's return to work.  (Id. at 125).

––––––––––––––––

party's statement of material facts.  Id.  Both the statement of material facts and the response thereto must include reference to the parts of the record that support the statements.  Id.  The moving party's material facts are deemed admitted if they are not properly controverted by the opposing party.  Id.  Thus, we can consider as undisputed any fact that defendant presents evidence to support, unless the plaintiff presents evidence to counter the defendant's evidence.

Similarly, the Federal Rules of Civil Procedure provide that:  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials - -including the facts considered undisputed - - show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. (e).

Plaintiff denies that the reason she was not brought back to work more quickly was due to the ongoing worker's compensation proceedings. The evidence she uses to support this denial is her deposition testimony that states "I just wanted to return to work." (Doc. 32, Pl.'s Ans. to Def.'s SOF, ¶ 125). Clearly, this "evidence" is insufficient to counter Defendant's Statement of Fact and plaintiff offers no evidence to establish that the delay was caused for some discriminatory reason.

On March 18, 2011, defendant offered plaintiff a "transitional worker" position. (Doc. 27-21, Dep. Kneisc at ¶ 14). "Transitional work" is work provided during the period of time after an employee returns to the workplace after suffering a workplace injury - but returns with work restrictions. The worker remains in the transitional position until she can perform the essential functions and responsibilities of her regular position. (Id. ¶ 16). Plaintiff returned to work in a transitional position in housekeeping where she performed various tasks including polishing silverware. (Id. ¶ 15). Defendant did not return her to her former position as beverage shift manager because her restrictions prevented her from performing the essential functions of that job. (Id. ¶ 25).

In April 2011, plaintiff's doctor revised her medical restrictions, which

caused defendant to move her from the housekeeping position to the finance department.  (Id. ¶¶ 20-21).   When the work in the finance department was completed, plaintiff was returned to another transitional employment position.  (Id. ¶ 22).   She stayed in that transitional position until her doctor pulled her from work again in June 2011.  (Id. ¶ 23). Plaintiff then remained out of work until July 29, 2011, when she resigned as part of her Worker's Compensation settlement.  (Id. ¶ 24).

In response to defendant's evidence regarding transitional employment and whether it complied with plaintiff's restrictions, plaintiff refers to her "IN-17" form again, which were the allegations she made against defendant before the PHRC.  She indicates that these allegations establish that her supervisor refused to look at her work restrictions, these restrictions were arbitrarily dismissed and job assignments were piled on plaintiff in a concerted effort to have her fail at her job. (Doc. 32, Pl. Ans. to Def.'s SOF at ¶¶ 126-27).  This response from plaintiff is inadequate and irrelevant.  First, she merely relies on allegations she has made, not evidence.  Second, she refers to when she returned to work after her first surgery.   The issue that defendant is addressing, however, is her return to work after the second surgery.  Because of the plaintiff's inadequate

response, or more accurately the non-response, we will consider the facts

that defendant has presented on this issue true and uncontested.   Thus,

judgment in the defendant's favor is appropriate on this issue.

### C.  Disability discrimination and failure to accommodate under ADA and PHRA

The next cause of action is plaintiff's claim for disability discrimination

and failure to accommodate under the ADA and the PHRA.  Defendant

argues that plaintiff cannot establish a *prima facie* case of disability

discrimination.

The law provides a *prima facie* case of disability discrimination,

includes the following, plaintiff:  "(1) has a 'disability,' (2) is a 'qualified

individual,' and (3) has suffered an adverse employment action because of

that disability." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d

Cir. 2006).   Under the ADA, a "disability" is "a physical or mental

impairment that substantially limits one or more major life activities . . . a

record of such an impairment; or . . . being regarded as having such an

impairment[.] " 42 U.S.C. § 12102 (1)(a).  "[M]ajor life activities include, but

are not limited to, caring for oneself, performing manual tasks, seeing,

hearing, eating, sleeping, walking, standing, lifting, bending, speaking,

breathing, learning, reading, concentrating, thinking, communicating, and

working." 42 U.S.C. § 12102 (2)(A).[14]

The ADA's definition of "disability" includes "being regarded as

having [an impairment that substantially limits one or more major life

activities[.]" 42 U.S.C. § 12102(1)(C).  "An individual meets the requirement

of 'being regarded as having such an impairment' if the individual

establishes that he or she has been subject to an action prohibited under

[the ADA] because of an actual or perceived physical or mental impairment

whether or not the impairment limits or is perceived to limit a major life

activity."  42 U.S.C. § 12102(3)(A).

Defendant argues as follows: 1) plaintiff did not suffer from a

disability as defined under the ADA; 2) she was not a "qualified individual"

when she was placed in "out of work" status by her doctor; and 3) she did

not suffer from an adverse employment action.

Although it is not a model of clarity, plaintiff's brief appears to attempt

to save the ADA claim several ways.  First, plaintiff claims that she suffered

---

[14]Our review of plaintiff's ADA claim also applies her PHRA disability
claim.  See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002)
("The PHRA is basically the same as the ADA in relevant respects and
Pennsylvania courts generally interpret the PHRA in accord with its federal
counterparts." (internal quotation marks and editing marks omitted)).

from a hostile work environment because of a "perceived" disability.
Second, she asserts that defendant failed to accommodate her
disability/perceived disability.  Third, with regard to her claim that she
actually suffered from a disability, plaintiff asserts that defendant failed to
engage in the "interactive process" to determine if she could perform the
essential functions of her job with a reasonable accommodation.

Plaintiff's evidence and arguments do not defeat the defendant's
motion for summary judgment.   The "evidence" plaintiff presents to
establish that others perceived her as disabled pertains to her co-workers'
displeasure with her taking time off after her first surgery.  Additionally, she
indicates that Farina gave her a "crappy attitude" following her return from
her second surgery.  This evidence does not at all reveal that anyone
perceived plaintiff as disabled as defined by the ADA.

Further, plaintiff argues that her employer's perception that she was
disabled is revealed by her change of job duties after she was injured in
December of 2008.  Plaintiff's argument is not cogent.  She does not
explain at all how defendant treated her as disabled after her return after
the December injury.  In actuality, she argues that defendant increased her
duties  - - which would indicate that the defendant did not regard her as

31

disabled.

Plaintiff also argues that defendant did not engage in the "interactive process" to determine the accommodations she needed to work with her disability.  We find this argument unconvincing.  The phrase  "interactive process" describes the duty of the employer to determine with a disabled employee if a reasonable accommodation exists that would qualify the employee to perform the essential functions of her job.  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317 (3d Cir. 1999).

Plaintiff has not established that she was disabled or perceived as disabled.   Thus, no duty arose on defendant's part to engage in an interactive process.  Moreover, the record reveals, that after plaintiff's initial injury she provided the defendant with the restrictions that her doctor set for her.  The defendant then provided accommodations, such as breaks to ice her knee (although she complained that the breaks were not lengthy enough), a modified duty of four-hour days, and a parking spot that was nearer the building.  (Def. SOF ¶ ¶ 62-70).

After she returned to work from the second surgery plaintiff was placed in a "transitional" work in housekeeping, a light duty program for workers' compensation injuries.  (Def. SOF ¶ 132).  "Transitional work" is

used by defendant during the time when an employee returns to work after suffering a workplace injury with restrictions until her health progresses to the point where she can perform the essential functions and responsibilities of her regularly assigned position.  (Id. ¶ 133).  Plaintiff was subsequently moved to a position in the finance department and then back to the transitional position in housekeeping.  (Id. ¶¶ 136-37).  Approximately three months after returning to work, plaintiff's physician pulled her out of work again.  (Id. ¶ 138).  She remained out of worked until she resigned as part of her worker's compensation settlement.

For the above reasons, we find that plaintiff has not established a prima facie case of disability discrimination.  She has not established that she was disabled or perceived as disabled or that the defendant took an adverse employment action against her based on a disability or perceived disability.  In fact, the record reveals that defendant attempted to work with the plaintiff and her physical restrictions after her surgeries.  They modified her duties as a beverage shift manager and eventually assigned her transitional light duty work.  Plaintiff has presented no evidence to support her claim and judgment will be granted to the defendant on these issues.

## III.  Section 1981 Claims

The third count of plaintiff's amended complaint is a cause of action for unlawful discrimination by defendant in the making and enforcement of contracts under 42 U.S.C. § 1981.  (Doc. 8, Am. Comp. ¶¶ 64-75). "Section 1981 prohibits 'racial' discrimination in the making of private and public contracts."  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 385 (3d Cir. 1999).[15]  Courts analyze Section 1981 claims under the analysis announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Id.  In other words, a section 1981 claim for employment discrimination is reviewed with the same burden shifting framework as a Title VII or ADA claim as discussed above.  Steward v. Rutgers, The State Univ., 120 F.3d 426, 431-32 (3d Cir. 1997).  For the same reasons as the plaintiff's Title VII, PHRA and ADA claims fail, therefore, plaintiff's section 1981 claim fails.  Accordingly, summary judgment will be granted to the defendant on Count III of plaintiff's complaint based on section 1981.

---

[15]  "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981.

## IV.  Punitive damages

As noted above, plaintiff's complaint seeks an award of punitive damages.  Finally, defendant argues that plaintiff has not presented any evidence that would support the award of punitive damages.  Because judgment will be granted to the defendant on all of plaintiff's claims, the punitive damages claim will be dismissed.

## Conclusion

Summary judgment will be granted to the defendant.  Plaintiff has not met the statute of limitations with regard to her Title VII and PHRA discrimination claims.  Additionally, plaintiff has not submitted evidence to support her claims.  She merely cites to allegations she made in her complaint before the PHRC and EEOC or in her amended complaint in the instant case.  Thus, we will grant judgment in favor of the defendant.  An appropriate order follows.


**Date: November 20, 2014**          **s/ James M. Munley**
                                     **Judge James M. Munley**
                                     **UNITED STATES OF AMERICA**